(No. 25468.—

THE VILLAGE OF SOUTH HOLLAND, Appellee, *vs.* MRS. PAUL STEIN, Appellant.

*Opinion filed April 17, 1940.*

LANDON L. CHAPMAN, (HAYDEN C. COVINGTON, of counsel,) for appellant.

Mr. JUSTICE GUNN delivered the opinion of the court:

Appellant, Mrs. Paul Stein, was charged with soliciting subscriptions for a magazine without a solicitor's permit from the board of trustees of the village of South Holland, Illinois, and upon trial was fined $5 and costs. The case was appealed to the criminal court of Cook county and tried upon an agreed statement of facts. Appellant was found guilty and fined the sum of $5. Motion was made to dismiss the complaint on the ground that the ordinance violated both the constitution of the State of Illinois and the constitution of the United States in that it denied and restricted: (a) Freedom of speech and press; (b) freedom

of worship, and (c) it is too vague and indefinite to provide a certain standard of guilt. After judgment in the criminal court the judge signed a certificate that the validity of a municipal ordinance was involved and that in his opinion the public interest required an appeal be taken directly to the Supreme Court.

The ordinance made it unlawful for any one to go in a private residence for the purpose of soliciting or to canvass for orders for goods, wares, merchandise or services of any description or solicit for the purpose of offering to furnish goods, wares, merchandise or services, to induce such orders, without obtaining a solicitor's permit. An application was required of the village board, setting forth detailed information. The village board, after investigation, may issue the permit if it believes the applicant is of good moral character and proposes to engage in a lawful or legitimate commercial or professional enterprise but the permit shall expire on the same day in which the permit was issued. The ordinance also provides for the revocation of such permit, and for a violation of the ordinance a fine of not less than $2 nor more than $100 is imposed.

Appellant belongs to an organization called "Jehovah's Witnesses" and offered to James Gouwens a one-year's subscription to a magazine called *"The Watch Tower,"* along with a book entitled *"Enemies,"* a pamphlet entitled *"Fascism or Freedom"* and another pamphlet entitled *"Facing Facts,"* all for the sum of one dollar, which publications said Gouwens then bought and paid for. Appellant was endeavoring to get other subscriptions and did not make an application or obtain a permit as required by the ordinance. Appellant is a minister of the gospel and if the party solicited was interested she inquired if she might play a record on her phonograph which she had with her, which contained a three-minute Bible lecture.

Among the many errors assigned is whether the ordinance materially interferes with and abridges freedom of speech and freedom of press as guaranteed by the constitu-

tion of Illinois and the fourteenth amendment of the constitution of the United States, and whether the ordinance is void for want of power in the village to enact it. A constitutional question may involve one under the Federal constitution as well as the State constitution. *VanDyke* v. *Commercial Men's Ass'n,* 358 Ill. 458; *Rothschild & Co.* v. *Steger & Sons Co.* 256 id. 196.

The magazine for which appellant was soliciting, introduced in evidence, contained some ten or twelve pages of printed matter and purports to be published semi-monthly by the Watch Tower and Tract Society. The book entitled *"Enemies"* is cloth bound and contains over three-hundred pages purporting to expose the enemies of mankind and to point out the way of protection from them. The other two tracts are pamphlets containing over fifty pages each. The receipt issued to the purchaser recites that *"The Watch Tower"* has been subscribed for by J. J. Gouwens for a period of one year.

Section 1 of the ordinance prohibits any one from going "in or upon any private residence in the village for the purpose of soliciting * * * or canvassing for orders for goods, wares and merchandise, or services of any character or description" without having first applied for and received a solicitor's permit.

Section 4 of article 5 of the Cities and Villages act (Ill. Rev. Stat. 1939, chap. 24, par. 65.3) authorizes a city to fix the amount, terms and manner of issuing and revoking licenses. It has been held that this section does not delegate unlimited licensing powers to cities, but has reference to subjects and occupations over which municipalities are given express power. (*Arms* v. *City of Chicago,* 314 Ill. 316.) Section 41 of article 5 of the Cities and Villages act (Ill. Rev. Stat. 1939, chap. 24, par. 65.40) authorizes cities to license, tax, regulate, suppress and prohibit hawkers, peddlers, etc. In *Emmons* v. *City of Lewistown,* 132 Ill. 380, this court held that a city has no authority to require book canvassers who solicit subscriptions for books for future

delivery, to obtain a license, because such canvassers are neither hawkers nor peddlers. See, also, *Village of Cerro Gordo* v. *Rawlings,* 135 Ill. 36.

In *City of Chicago* v. *Schultz,* 341 Ill. 208, this court held that an ordinance making it a punishable offense to distribute or hand out any circular, dodger, handbill or pamphlet, card, picture or advertising matter of any kind whatsoever on the streets and sidewalks of the city, was an unreasonable exercise of the police power or of the power to regulate the use of the streets, as there was no express grant of power which would enable the city to pass such an ordinance. Without directly referring to any specific provision of the constitution it was held that such an ordinance was invalid under our system of government.

It might well be doubted whether the ordinance in question would require a permit to take subscriptions for the publication involved, but the pamphlets and book would come within the term "goods, wares and merchandise." Even though the latter come within the provisions of the ordinance, still they are publications purporting to be educational, informative and possibly semi-religious in character, and all must be regarded as being within the same category in considering whether the constitutional rights of the appellant have been violated. Appellant has been convicted under the ordinance of taking subscriptions for a published magazine and for furnishing printed publications, as the charge expressly states the offense to be soliciting without a permit under an ordinance entitled "Solicitors and Peddlers Ordinance," although no reference to such is made. Without reference to the question whether the acts of appellant are within the specific provisions of the ordinance, the trial court, nevertheless, held that her acts were covered by the provisions thereof.

Section 4 of article 2 of the constitution of Illinois provides: "Every person may speak freely, write and publish on all subjects, being responsible for the abuse of that liberty;" etc. The constitution of the United States, article 1

of the amendments, provides: "Congress shall make no law * * * abridging the freedom of speech or of the press," etc., and it has been held that this privilege is secured to all persons by the fourteenth amendment of the constitution. *Grosjean* v. *American Press Co.* 297 U. S. 233, 80 L. ed. ·660; *Lovell* v. *City of Griffin,* 303 id. 444, 82 L. ed. 948; *DeJonge* v. *Oregon,* 299 id. 353, 81 L. ed. 278; *Herndon* v. *Lowry,* 301 id. 242, 82 L. ed. 949.

The case of *Lovell* v. *City of Griffin, supra,* involved one of Jehovah's witnesses, who was convicted of violating an ordinance of the city of Griffin which prohibited the distribution, either by sale or by gift, of printed matter within the city without a written license from the city manager. The defendant's violation consisted of distribution, without permission, of a pamphlet and magazine setting forth the gospel of the *Kingdom of Jehovah,* quite similar to the one herein involved. In holding the ordinance void the court said: "We think that the ordinance is invalid on its face. Whatever the motive which induced its adoption, its character is such that it strikes at the very foundation of the freedom of the press by subjecting it to license and censorship. The struggle for the freedom of the press was primarily directed against the power of the licensor. It was against that power that John Milton directed his assault by his 'Appeal for the Liberty of Unlicensed Printing.' The liberty of the press became initially a right to publish 'without a license what formerly could be published only with one.' While this freedom from previous restraint upon publication cannot be regarded as exhausting the guaranty of liberty, the prevention of that restraint was a leading purpose in the adoption of the constitutional provisions. * * * Legislation of the type of the ordinance in question would restore the system of license and censorship in its baldest form."

In the case of *Schneider* v. *Town of Irvington,* (1939) 84 L. ed. 115, the Supreme Court of the United States has extended the rule laid down in *Lovell* v. *City of Griffin,*

*supra*, and, with great clarity, pointed out the scope of the constitutional right of free speech as attempted to be limited by municipal regulations. This decision was a consolidation of four cases involving ordinances in cities from New Jersey, California, Wisconsin and Massachusetts.

The Los Angeles, Milwaukee, and Worcester ordinances prohibited the distribution of handbills on streets or sidewalks or parks and were upheld by the State courts which distinguished *Lovell* v. *City of Griffin, supra*, on the ground that distribution was merely excluded from public streets, leaving other places open for the exercise of the liberty of speech and press. The Supreme Court held that the purpose of keeping streets clean and of good appearance was insufficient to justify a person lawfully on the street from distributing literature, saying: "Any burden imposed on city authorities in cleaning and caring for streets as an indirect consequence of such distribution results from the constitutional protection of the freedom of speech and press." The Town of Irvington, New Jersey, ordinance provided no one should canvass, solicit or distribute circulars or other matter or call from house to house without first reporting to and receiving a written permit from the chief of police. It required information to be given in the application and left it to the officer's discretion whether the permit might be granted, refused or recalled. The case involved one of Jehovah's Witnesses who called from house to house and did substantially the same things as appellant did in the case here. She was convicted and the highest court of New Jersey affirmed the conviction.

The convictions in all four of these cases were reversed by the United States Supreme Court, saying: "Although a municipality may enact regulations in the interest of public safety, health, welfare or convenience, these may not abridge the individual liberties secured by the constitution to those who wish to speak, write, print or circulate information or opinion." The opinion holds that to require censorship through license strikes at the very heart of constitutional

guarantees, but it is careful in saving to municipalities the right to license and regulate in matters that do not directly contravene the constitution.

The constitution of Illinois is even more far-reaching than that of the constitution of the United States in providing that every person may speak freely, write and publish on all subjects, being responsible for the abuse of that liberty. Webster's International Dictionary defines the word "publish" as meaning "to bring before the public as for sale or distribution."

In *Perkins* v. *Comrs. of Cook County,* 271 Ill. 449, 475, we said the primary meaning of the word "publish" is to make known, following the definition laid down in *State* v. *Orange,* 54 N. J. L. 111. Thus, the constitution not only guarantees the right to speak and write, but also to make known, which is not limited to a person's own writing.

There seem to be few reported decisions in this State upon section 4 of article 2 of the constitution. *City of Chicago* v. *Rhine,* 363 Ill. 619, upheld a conviction of the violation of an ordinance by selling magazines in the loop district contrary to an ordinance. It was there disclosed that plaintiff in error was carrying out a private commercial enterprise for personal profit. It was disclosed that the ordinance was limited to the congested part of the city and was general in its character, nor, so far as the opinion discloses, was any permit required. It comes clearly within the exceptions pointed out in *Schneider* v. *Town of Irvington, supra.*

A careful examination of the ordinance involved discloses that it was intended to cover both private and public places as it expressly prohibits them from going "in or upon any private residence" or "to canvass for orders * * * of any kind or description." The complaint was general in that it charged appellant with the offense of "soliciting without a permit" within the village of South Holland, in violation of the ordinance. The statement of facts does not disclose whether the sale to the purchaser was made in a

private place or a public place but simply that an offer to sell one-year's subscription to the magazine, together with the books and pamphlets, was made for the sum of $1, within the said village. The village authorities and the court construed this as a sufficient charge under the ordinance so that it clearly appears the soliciting for subscriptions to a magazine and selling or distributing pamphlets largely religious or educational in their character, is forbidden in any public or private place in the village of South Holland without the required permit.

It may be argued that the ordinance is entitled, "Solicitors and Peddlers Ordinance." As pointed out, we have held that soliciting for subscriptions to books or for other goods does not come within the statute. (*Emmons* v. *City of Lewistown, supra; Village of Cerro Gordo* v. *Rawlings, supra.*) The same principle would apply to taking a subscription for a publication. It may be that the ordinance was not intended to apply to the giving away of the pamphlets and books but the criminal court held that taking a subscription and giving away the book and pamphlets came under the ordinance. Thus the question is not the formal interpretation of the ordinance but the application given to it. A statute or ordinance may be invalid as applied to one state of facts and yet valid as applied to another. *Whitney* v. *California,* 274 U. S. 357, 71 L. ed. 1091; *Dahnke-Walker Milling Co.* v. *Bondurant,* 257 id. 282, 66 L. ed. 239; *Herndon* v. *Lowry, supra.*

If the conviction was based on soliciting the subscription of a publication without a permit, it was error under the decisions of this court. If the conviction was based on giving or furnishing a book or pamphlets as disclosed by the stipulation, it violated both the State and Federal constitutions. In either event the ordinance would be void.

The judgment of the criminal court of Cook county is reversed.                                             *Judgment reversed.*